## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Docket no. 08-cr-52-P-S |
| BRUCE GAGNON, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER ON MOTION TO DISMISS INDICTMENT

Before the Court is Defendant's Motion to Dismiss Indictment (Docket # 21) and Defendant's Supplemental Motion to Dismiss Indictment (Docket # 26). These Motions present multiple challenges to the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901 et seq. As explained herein, the Court ultimately concludes that none of these challenges have merit and, therefore, DENIES the Motions.

### I. FACTUAL BACKGROUND

Defendant Bruce Gagnon was indicted on March 12, 2008. The Indictment alleges that on or about February 2, 2007 Gagnon was "a person required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce and did knowingly fail to register" thereby violating 18 U.S.C. § 2250(a). (Indictment (Docket # 1).) As Defendant himself acknowledges in connection with the pending motion, the Government's claim that Gagnon was required to register as a sex offender arises out of Gagnon's conviction for aggravated felonious sexual assault in New Hampshire. Gagnon was convicted of this felony on

December 4, 2000 as the result of a guilty plea.[1] Under the plea deal's terms, Gagnon, who had spent almost a year in pretrial detention, essentially received "time served" plus three years probation. Following this conviction, Gagnon was immediately required to register as a sex offender under the then-applicable New Hampshire statute. As part of the New Hampshire Offender Registration Information Form that Gagnon filled out on December 4, 2000, Gagnon acknowledged and signed the following statement:

> I am registering as a convicted sex offender . . . pursuant to RSA 651-B:4 through 651-B:6. I understand that I must register with the local law enforcement agency having jurisdiction over my place of residence **every year**, within 30 days of my registration anniversary date, which is . . . 07/20/76.
> In addition to registering with the local enforcement agency which has jurisdiction over my place of residence, I understand that if I work or am a student in a state other than New Hampshire, or move out of New Hampshire I should contact the appropriate out-of-state law enforcement agency to determine if I must register in that state as well. I understand that failure to comply with the registration requirements of RSA 651-B may result in criminal charges.
> If I change my name or address I must notify the local law enforcement agency with which I last registered within **10 days** of such change of name or address, and also register with the local law enforcement agency which has jurisdiction over my new residence within **30 days**.

(Gov't Ex. 3 (Docket # 23-4).)

From December 2000 through July 2005, Gagnon diligently complied with the New Hampshire registration requirements, filing updated registration forms with the New Hampshire authorities on December 11, 2000, December 26, 2000, January 6, 2001, June 11, 2003,[2] July 20, 2003, November 19, 2003, December 17, 2003, February 27, 2004, July 22, 2004, August 23, 2004, April 12, 2005, May 4, 2005, and July 26, 2005. (See Gov't Exs. 4- 6 (Docket #s 23-5 - 23-7), Gov't Ex. 10 (Docket #s 23-11), Gov't Exs. 12 -21 (Docket # 23-13 – 23-22).) In July

---

[1] The factual basis for the conviction was Gagnon's admitted rape of a sleeping young woman in March 1998, which occurred in an apartment shared by the victim and her boyfriend. Gagnon, the victim, her boyfriend and others had been drinking in the apartment in the hours leading up to the rape.

[2] The undisputed factual record submitted by the Government indicates that Gagnon was incarcerated on a probation violation from approximately July 25, 2001 to approximately June 10, 2003, which accounts for the gap in registration statements between January 2001 and June 2003. (See Gov't Exs. 11 & 12 (Docket # 23-12 – 23-13).)

2006, Gagnon was due to file an annual update of his New Hampshire sex offender registration. After he failed to do so, a complaint was filed in New Hampshire state court and Gagnon was arrested on September 13, 2006. (See Ex. 22 (Docket # 23-23).) The judge ordered him to update his registration by September 18, 2006 and Gagnon complied by filing an updated registration form by that deadline. (See Ex. 24 (Docket # 23-25).) Approximately two months later, Defendant was again charged with failure to update his New Hampshire sex offender registration after he apparently moved from the address listed in the September 18, 2006 registration form. (See Ex. 25 (Docket # 23-26).) He ultimately pled guilty to this charge on December 22, 2006 and was released on December 24, 2006. Prior to his guilty plea and while he was in pretrial detention, Gagnon did file an updated sex offender registration form dated December 4, 2006. This is apparently the last sex offender registration form filed by Gagnon.

Some time after his release on December 24, 2006, Gagnon moved to Maine and signed a lease for an apartment beginning on February 2, 2007. However, he did not notify the New Hampshire authorities of this new Maine address. As of February 29, 2007, Gagnon had not registered with the Maine Sex Offender Registry. (See Ex. 29 (Docket # 23-30).)

Pursuant to Maine law, there is no doubt that Gagnon was required to register as a sex offender upon moving to Maine. See 43-A M.R.S.A §§ 11202(2) & 11203(7) & (8). By the time Gagnon moved to Maine, the federal government had also enacted SORNA.

## II. SORNA BACKGROUND

SORNA was enacted on July 27, 2006 as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587. Building on earlier federal legislation that encouraged states to set up statewide sex offender registries, SORNA's aim is to establish a

3

nationwide network of sex offender registration and notification programs as well as improve the enforcement of sex offender registration requirements.

SORNA applies broadly to a defined class of "sex offenders," which includes persons convicted of child pornography offenses as well as almost all offenses involving sexual conduct. See 42 U.S.C. § 16911. SORNA lays out the following requirements for initial registration and updated registration by sex offenders:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

SORNA also provides a federal penalty for anyone required to register who knowingly fails to register or update a registration and "travels in interstate or foreign commerce." 18 U.S.C. § 2250(a).

Responding to the directive contained in § 16913(d), the Attorney General initially announced an interim rule that became effective on February 28, 2007. See 72 Fed. Reg. 8894 (Feb. 28, 2007). Pursuant to this rule, the Attorney General declared that SORNA's requirements applied "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3 (2007). The Attorney General then followed up with more detailed proposed guidelines that were subject to notice and comment. See 72 Fed. Reg. 30210 (May 30, 2007). The Attorney General's final regulations on the interpretation and implementation of SORNA became effective on July 2, 2008, after the pending Motion to Dismiss was filed.[3] See 73 Fed. Reg. 38030 (July 2, 2008).

### III. DISCUSSION

#### A. SORNA's Applicability to the Allegations Here

Given the timeline laid out above, the Court begins its discussion with some clarification of the SORNA provisions applicable to this case. First, the Court does not believe that the allegations here, if true, create a record of Gagnon failing to comply with the *initial* registration

---

[3] There is no dispute that given the date of the indictment in this matter (March 12, 2008) and the date of the alleged violation (February 2, 2007) that the final regulations have no application to this case. Therefore, the Court does not include any discussion of the substance of these final regulations.

5

requirements discussed in 42 U.S.C. § 16913(b) & (d).  Because Gagnon was already a registered sex offender when SORNA was enacted, SORNA only required him to keep his registration current on and after July 26, 2006.  To the extent that Defendant argues that the passage of SORNA should be construed to mean that all registered sex offenders were once again required to initially register pursuant to § 16913(b) & (d), the Court simply does not believe that such a reading of the statute is warranted by the statutory language or common sense.  While subsections (b) and (d) when read together seem to contemplate the need for clarification as to "initial registrations" by persons convicted of qualifying sex offenses prior to July 27, 2006, the Court believes that need for clarification applies to a limited class of persons who, for various reasons, did not have a registration requirement prior to the passage of SORNA but nonetheless were subject to sex offender registration requirements after SORNA became law on July 27, 2006.  Gagnon does not fall within this class of persons.

The allegations in this case clearly pertain to Gagnon's failure to keep his registration current and, as such, are covered by 42 U.S.C. § 16913(a) & (c).  See United States v. May, -- F.3d --- , 2008 WL 2917766 at *5 (8th Cir. July 31, 2008) (citing and quoting United States v. Roberts, No. 6:07-cr-70031, 2007 WL 2155750 (W.D. Va. July 27, 2007)); United States v. Ditomasso, 552 F. Supp. 2d 233, 238, 241-42 (D.R.I. 2008). Under these subsections, Gagnon was required to "keep [his] registration current in each jurisdiction" in which he resided and "not later than 3 business days after each change of . . . residence . . . appear in person in at least 1 jurisdiction . . .  and inform that jurisdiction of all changes in the information required . . . in the sex offender registry." 42 U.S.C. § 16913(a) & (c).

Under this reading of § 16913, the regulations promulgated by the Attorney General pursuant to § 16913(d) do not have any real applicability here.  Rather, to the extent that these

regulations were promulgated pursuant to the delegation contained in § 16913(d), the regulations are irrelevant since the Court has already concluded that the allegations against Gagnon do not involve an "initial registration" pursuant to § 16913(b).  See May, 2008 WL at *3-*5; Ditomasso, 552 F. Supp. 2d at 241-42.  Even if the case involved the application of §16913(b), the final SORNA regulations, which only became effective on July 2, 2008, could have no impact in the context of this March 12, 2008 Indictment.  Moreover, given the fact that the Indictment alleges a violation of 18 U.S.C. § 2250 occurred on or around February 2, 2008, the effect of the interim regulations promulgated on February 28, 2008 is similarly questionable.  In short, the Court finds that the SORNA regulations promulgated on or after February 28, 2007 are inapplicable in the context of the pending Indictment.  Thus, in examining the pending Motion to Dismiss the Indictment, the Court focuses solely on the plain language of 18 U.S.C. § 2250 and 42 U.S.C. § 16913(a) & (c).

     Defendant's Motion presents many arguments that challenge the statutory provisions related to initial registration and the implementing regulations promulgated on and after February 28, 2007.  Such challenges are without merit in light of the Court's above discussion, which follows the reasoning recently laid out by the Eighth Circuit in United States v. May, -- F.3d --- , 2008 WL 2917766 at *5 (8th Cir. July 31, 2008).  Specifically, the Court sees no basis for dismissal of the pending Indictment based on arguments that: (1) 18 U.S.C. § 2250 "is not applicable to Mr. Gagnon since Maine has not yet implemented the law" (Def.'s Mot. to Dismiss (Docket # 21) at 13); (2) 18 U.S.C. § 2250 "is not applicable to Mr. Gagnon since he is 'unable' to register" (Id. at 17); (3) "Mr. Gagnon had no duty to register under SORNA because the Government failed to Notify him of the Act's requirements in accordance with 42 U.S.C. §

16917 (Id. at 20);[4] (4) the delegation to the Attorney General contained in 42 U.S.C. § 16913(d) violates the Non-Delegation Doctrine;[5] and (5) the Attorney General's February 28, 2007 Interim Rule violated the Administrative Procedure Act requirements for notice and comment rulemaking.[6]

All of these arguments rely upon the view that the passage of SORNA created brand new sex offender registration requirements; such that anything done prior to the passage of SORNA, prior to the promulgation of SORNA regulations and/or prior to Maine implementing those regulations does not fall under the purview of SORNA and cannot be subject to prosecution under 18 U.S.C. § 2250. Thus, under Defendant's view, Gagnon and all sex offenders who were subject to sex offender registration requirements prior to the passage of SORNA are not subject to any of SORNA's requirements or penalties until all of the improvements contemplated by SORNA are fully implemented. In the Court's assessment, SORNA does not create such a brave new world. See, e.g., United States v. Fuller, No. 5:07-cr-462, 2008 WL 2437869 at *2 (N.D.N.Y. June 13, 2008) (holding it was not impossible for a defendant to register pursuant to SORNA simply because state had not completed implementation of SORNA and collecting cases with similar holdings); United States v. David, No. 1:08CR11, 2008 WL 2045830 at *7

---

[4] There is no doubt that some of SORNA's registration requirements may be more burdensome than the requirements that Gagnon has previously received notice of. However, there is no suggestion that Gagnon was complying with the registration requirement he acknowledged in prior registrations and is being prosecuted solely for failure to comply with some new and more burdensome SORNA requirement.

[5] The Court notes that this particular challenge to SORNA has been rejected by multiple courts. See, e.g., May, 2008 WL at *7 (rejecting Non-Delegation Doctrine challenge for lack of standing); United States v. Oakley, No. 8:07CR437, 2008 WL 2986256 at *4 (D. Neb. July 31, 2008) (collecting cases); United States v. Trent, --- F. Supp. 2d ---, 2008 WL 2897089 at *10 (S.D. Ohio July 24, 2008) (collecting cases; United States v. Tong, No. CR-08-20-RAW, 2008 WL 2186205 at *2 (E.D. Okla. 2008).

[6] Nonetheless, the Court notes that in making the interim rule effective immediately with the opportunity for post-promulgation comment, the Attorney General invoked "the good cause exceptions found at 5 U.S.C. § 553(b)(3)(B) & (d)(3), for circumstances in which 'notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(3)(B)" and made findings that supported the use of the good cause exception as required by statute. 72 Fed. Reg. 8894 (Feb. 28, 2007). See Tong, 2008 WL at *2 (similarly rejecting an APA challenge).

8

(W.D.N.C. May 12, 2008) (collecting cases). Rather, SORNA simply seeks to close loopholes and thereby expand upon prior sex offender registration legislation. To the extent that some of these loopholes were closed by the plain language of SORNA, which became law on July 27, 2006, Gagnon was required to comply with that statutory language.[7] Cf. United States v. Madera, 528 F.3d 852, 858-59 (11th Cir. 2008) (concluding that a defendant had no obligation to register under SORNA during the gap period between the enactment of SORNA (July 27, 2006) and the promulgation of the interim regulation (February 28, 2007)).[8]

Turning to Defendant's remaining arguments, the Court need not reinvent the wheel. Rather, the Court's consideration of these remaining arguments is informed by other recent federal decisions examining similar SORNA challenges and therefore the Court's discussion is brief.

### B. *Ex Post Facto* Violation

Because Gagnon's sex offense conviction predates the passage of SORNA by more than five years, Gagnon argues that as applied to him SORNA amounts to an *ex post facto* violation. However, the pending Indictment does not seek to punish Gagnon for his behavior prior to the enactment of SORNA, rather it seeks a criminal sanction of Gagnon's failure to comply with registration requirements on or around February 2, 2007. Following the Supreme Court's decision in Smith v. Doe, 538 U.S. 84 (2002), the Court cannot say the SORNA's registration requirements are anything other than a civil, nonpunitive regulatory scheme. See id. at 96. That § 2250 proscribes a criminal penalty for a person's failure to comply with the SORNA regulatory

---

[7] To this end, the Court notes that SORNA has defined "sex offender registry" as simply "a registry of sex offenders maintained by a jurisdiction." 42 U.S.C. § 16911(9). Under this definition, any sex offender registry maintained by either Maine or New Hampshire on and after July 27, 2006 became a "SORNA" registry.

[8] The Court has fully considered this recent opinion from the Eleventh Circuit, which Defendant promptly brought to the Court's attention via his Supplemental Motion to Dismiss (Docket # 26). Ultimately, the Court does not find the reasoning of Madera persuasive.

scheme does not amount to an *ex post facto* violation.  See, e.g., United States v. May, -- F.3d ---, 2008 WL 2917766 (8th Cir. 2008).  Therefore, this Court joins many other federal courts in finding that SORNA does not create an *ex post facto* violation.

### C. Commerce Clause Violation

This Court has previously summarily denied a motion to dismiss, which argued that SORNA violates the Commerce Clause.  See Feb. 19, 2008 Endorsement Order (Docket # 25) in United States v. Majeroni, 2:07-cr-113-GZS.  In Majeroni, this Court held that SORNA was Congress' appropriate response to a national problems and cited United States v. Gould, 2007 WL 4371418 (D. Md. Dec. 13, 2007) and Gonzales v. Raich, 545 U.S. 1 (2005).  The Court sees no reason to differentiate the Commerce Clause challenge presented by the pending Motion.  The Court notes that multiple other federal courts have rejected Commerce Clause challenges to SORNA.  See, e.g., David, 2008 WL at *8; Ditomasso, 552 F. Supp. 2d at 245; United States v. Mason, 510 F. Supp. 2d 923, 931-32 (M.D. Fla. 2007); United States v. Hinen, 487 F. Supp. 2d 747, 757-58 (W.D. Va. 2007).  But see United States v. Waybright, --- F. Supp. 2d ---, 2008 WL 2380946 at *11 (D. Mont. June 11, 2008) (finding that 42 U.S.C. § 16913 was not a valid exercise of Congress' power under the Commerce Clause).

### D. Tenth Amendment Violation

Defendant finally argues that SORNA, as this Court has construed it, "compels [Maine] to accept registrations" before Maine (and other jurisdictions) "have had an opportunity to choose to adopt SORNA provisions voluntarily." (Def.'s Mot. at 35.)  The Court does not agree with this characterization of the registration system contemplated by SORNA.  Rather, in the Court's view, SORNA allowably creates financial incentives to encourage states, including Maine, to bring its sex offender registration system in line with SORNA's requirements.  Prior to

and regardless of whether Maine chooses to accept the financial incentives, the Federal Government commits no violation of the Tenth Amendment in the context of this case by enforcing Gagnon's failure to comply with sex offender registration requirements that were simultaneously mandated by SORNA and existing Maine statutes.  In closing, the Court notes that all federal courts that have considered similar Tenth Amendment challenges to SORNA by indicted defendants have rejected this argument.  See, e.g., Tong, 2008 WL at *2; David, 2008 WL 2045830 at n.7;  Ditomasso, 552 F. Supp. 2d at 247-48;  see also Waybright, --- F. Supp. 2d ---, 2008 WL at *12 (finding the defendant lacked standing to press a Tenth Amendment challenge).

## IV. CONCLUSION

Having found no basis for dismissing the pending Indictment, the Court hereby DENIES Defendant's Motion (Docket # 21) and Defendant's Supplemental Motion to Dismiss Indictment (Docket # 26).

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 11th day of August, 2008.